J-S17032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.M.B., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.B., Mother | : | No. 2854 EDA 2016 |

Appeal from the Order entered August 4, 2016
in the Court of Common Pleas of Philadelphia County,
Family Court Division, No(s): CP-51-AP-0000649-2016;
CP-51-DP-0001530-2015


| | | |
|---|---|---|
| IN THE INTEREST OF: M.A.H., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.B., Mother | : | No. 2855 EDA 2016 |

Appeal from the Order entered August 4, 2016
in the Court of Common Pleas of Philadelphia County,
Family Court Division, No(s): CP-51-AP-0000082-2016;
CP-51-DP-0001190-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: M.S.S.H., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.B., Mother | : | No. 2856 EDA 2016 |

Appeal from the Order entered August 4, 2016
in the Court of Common Pleas of Philadelphia County,
Family Court Division, No(s): CP-51-AP-0000084-2016;
CP-51-DP-0001191-2014

BEFORE:  OLSON, STABILE and MUSMANNO, JJ.

J-S17032-17

MEMORANDUM BY MUSMANNO, J.:                    **FILED APRIL 13, 2017**

A.B. ("Mother") appeals from the Orders terminating her parental rights as to her children, T.M.B. (born in May 2015), M.A.H. (born in June 2006), and M.S.S.H. (born in March 2008) (collectively, "Children"), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b), and changing each child's permanency goal to adoption. Counsel for Mother has filed a Petition to Withdraw from representation, and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).[1] After careful consideration, we grant counsel's Petition to Withdraw, and affirm the Orders of the trial court.

In its November 14, 2016 Opinion, the trial court set forth the history underlying the instant appeal, as well as its Findings of Fact. **See** Trial Court Opinion, 11/14/16, at 1, 3-8 (unnumbered). We adopt the trial court's recitation for the purpose of this appeal. **See id.**

On August 4, 2016, the trial court entered Orders terminating Mother's parental rights as to Children, and changing each child's permanency goal to adoption. Thereafter, Mother filed a timely Notices of Appeal and Concise Statements of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i).[2]

---

[1] **Anders** principles apply to appeals involving termination of parental rights. **In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004).

[2] This Court consolidated the cases for disposition.

Subsequently, Mother's counsel filed with this Court a Petition to Withdraw from his representation of Mother, and an **Anders** brief.

When presented with an **Anders** brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). To be permitted to withdraw, counsel must (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the brief to the client; and (3) advise the client that he or she has the right to retain private counsel or raise additional arguments that the client deems worthy of the court's attention. **In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004).

Here, counsel filed a Petition to Withdraw, stating that he "has made a thorough and conscientious examination of the record." Petition to Withdraw, ¶ 4. Counsel notified Mother of the withdrawal request, supplied her with copies of the Petition to Withdraw and the **Anders** brief, and sent Mother a letter explaining her right to proceed *pro se* or with new, privately-retained counsel to raise any additional points or arguments that Mother believes have merit. **See id.** at ¶ 3; Letter, 1/3/17. Consequently, we conclude that Mother's counsel has met the procedural requirements of **Anders**.

We must next determine whether counsel's **Anders** brief meets the requirements established by the Pennsylvania Supreme Court in **Santiago**. In **Santiago**, our Supreme Court stated that the **Anders** brief must

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. Further, "[a]fter establishing that the antecedent requirements have been met, this Court must then make an independent evaluation of the record to determine whether the appeal is, in fact, wholly frivolous." **Commonwealth v. Palm**, 903 A.2d 1244, 1246 (Pa. Super. 2006) (quoting **Commonwealth v. Townsend**, 693 A.2d 980, 982 (Pa. Super. 1997)).

In the **Anders** brief, counsel provides a summary of the facts and procedural history of the case, refers to evidence of record that might arguably support the issues raised on appeal, provides citations to relevant case law, states his conclusion that the appeal is wholly frivolous, and provides his reasons for concluding the appeal is frivolous. Accordingly, counsel has complied with the requirements of **Anders** and **Santiago**.

Mother has not filed a *pro se* brief or a counseled brief with new, privately-retained counsel. We, therefore, review the following issues raised in the *Anders* brief:

Whether there is anything in the record that might arguably support the appeal that obviates a conclusion that the appeal is frivolous[?]

…

[1.] Whether it was proven by clear and convincing evidence that Mother's parental rights should be terminated under Sections 2511(a) & (b)[?]

[2.] Whether[,] under the Juvenile Act, 42 Pa.C.S.A. [§] 6351, and 55 Pa. Code [§] 3130.74, in accordance with the provisions of the federal Adoption and Safe Families Act, 42 U.S.C.[A.] [§] 671 *et seq.*[,] reasonable efforts were made to reunite [] Mother with [Children] and whether the goal changes to adoption [were] the disposition best suited to the safety, protection and physical, mental and moral welfare of [] Children[?]

*Anders* Brief at 6 (capitalization omitted, issues renumbered).

Regarding the termination of her parental rights, counsel states Mother's potential argument that the Department of Human Services ("DHS") and the Wordsworth Community Umbrella Agency ("CUA"), which had been assigned to provide services to the family, failed to make reasonable efforts to reunify Mother with Children.[3] *Anders* Brief at 18.

Our Supreme Court has set forth the following standards in reviewing the termination of parental rights:

---

[3] In the *Anders* brief, counsel points out that Mother failed to appear for the termination hearing/goal change hearing. *Anders* Brief at 12. As a result, counsel stipulated to the averments of the termination Petitions. *Id.*

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. … [O]ur standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. **In re R.J.T.**, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. **Id.** As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. **Id.** Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. **Id.**

**In re Adoption of S.P.**, 47 A.3d 817, 826 (Pa. 2012) (some internal citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, as we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" **Id.** (quoting **In re J.L.C.**, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

In its Opinion, the trial court set forth the relevant law and its reasons for terminating Mother's parental rights to Children pursuant to subsections (a)(2) and (b). **See** Trial Court Opinion, 11/14/16, at 9-11 (unnumbered). The trial court's findings are supported in the record, its legal conclusions are sound, and we discern no abuse of discretion by the trial court. **See id.**

We therefore affirm on the basis of the trial court's Opinion with regard to the termination of Mother's parental rights to Children pursuant to subsections (a)(2) and (b). ***See id.***; ***see also In re D.C.D.***, 105 A.3d 662, 675 (Pa. 2014) (stating that, "while reasonable efforts should be considered and indeed, in the appropriate case, a trial court could insist upon their provision, we hold that nothing in the language or the purpose of Section 6351(f)(9) [of the Juvenile Act] forbids the granting of a petition to terminate parental rights, under Section 2511, as a consequence of the agency's failure to provide reasonable efforts to a parent.").

In the ***Anders*** brief, Mother next claims that the change of Children's permanency goal to adoption is not in Children's best interests. ***Anders*** Brief at 20.

"When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion." ***In re N.C.***, 909 A.2d 818, 822 (Pa. Super. 2006). "[T]he best interests of the child and not the interests of the parent must guide the trial court, and the burden is on the child welfare agency involved to prove that a change in goal would be in the child's best interest." ***In re R.I.S.***, 36 A.3d at 573 (citations omitted). The safety, permanency, and well-being of the child must take precedence over all other considerations. ***In the Matter of S.B.***, 943 A.2d 973, 978 (Pa. Super. 2008).

Having already determined that it is in Children's best interests to terminate Mother's parental rights, we also agree that it is in Children's best interests to change their permanency goals to adoption. Accordingly, we affirm the termination of Mother's parental rights as to Children, and the change of Children's permanency goals to adoption.

Orders affirmed.

Judge Stabile joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2017

THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COUNTY

IN THE COURT OF COMMON PLEAS

| | |
|---|---|
| IN THE INTEREST OF:<br>T.M.B., A MINOR | FAMILY COURT DIVSION<br>CP-51-DP-0001530-2015<br>CP-51-AP-0000649-2016<br>FN-51-001160-2014<br>2854 EDA 2016 |
| M.A.H., A MINOR | CP-51-DP-0001190-2014<br>CP-51-AP-0000082-2016<br>FN-51-001160-2014<br>2855 EDA 2016 |
| M.S.S.H., A MINOR | CP-51-DP-0001191-2014<br>CP-51-AP-0000084-2016<br>FN-51-001160-2014<br>2856 EDA 2016 |
| APPEAL OF<br>A.B., MOTHER | |

## OPINION

### PROCEDURAL HISTORY

On August 4, 2016, the Court held a hearing on the Petition to Terminate the Parental Rights ("Petition") of the biological mother of M.A.H., M.S.S.H., and T.M.B. (collectively the "Children"). The Petition was filed by the Department of Human Services ("DHS"). A.B. ("Mother") was not present but was represented by counsel. After a full hearing on the merits, the Court found clear and convincing evidence to involuntarily terminate the parental rights of Mother as to the Children.

### STATEMENT OF MATTERS COMPLAINT OF ON APPEAL

Mother's Statement of Matters Complained of an Appeal is set forth in its entirety as follows:

1. Whether under the Juvenile Act, 42 Pa.C.S.A. Section 6351[1], and 55 Pa.Code Section 3130.74[2], in accordance with the provisions of the Federal Adoption and Safe Families Act, 42 U.S.C. Section 671[3] et seq., reasonable efforts were made to reunite the Mother with her child and whether the goal change to adoption was the disposition best suited to the safety, protection and physical, mental and moral welfare of the child.

2. Whether it was proven by clear and convincing evidence that Mother's parental rights should be terminated under Sections 2511(a)(2) and 2511(b).

---

[1] (a) General rule.--If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child:
(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:
(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.
**42 Pa.C.S.A. § 6351(f)(9)(i-iii)**

[2] (a) The county agency shall file a petition or motion for court approval prior to a change in a court-ordered goal, placement, visitation or service.(b) Petitions or motions, including petitions for placement reviews and dispositional review hearings, shall clearly state the agency's recommendation about each issue before the court and the factual allegations supporting each recommendation.
(c) A petition or motion filed with the court shall be mailed to all parties and their counsel of record at least 15 days in advance of a hearing thereon. The county agency will not be sanctioned by the Department for noncompliance with the 15-day requirement of this section in instances when the scheduling of the hearing is beyond the control of the agency, and the agency has given as much notice as possible under the circumstances.
(d) In an emergency as defined in § 3130.68(b) and (i) (relating to visiting and communication policies), the county agency may change the child's location or visiting arrangements prior to obtaining court approval if it files a petition or motion with the court within 24 hours of the action taken. In these cases, the county agency shall immediately provide date stamped copies of the petition or request to the child's attorney, the child, if age appropriate, the child's parents or legal guardians and their legal counsel, if known.
**55 Pa.Code § 3130.74**

[3] For children placed in foster care on or before November 19, 1997, the county agency shall file or join a petition for termination of parental rights under this subsection in accordance with section 103(c)(2) of the Adoption and Safe Families Act of 1997 (Public Law 105-89, 111 Stat. 2119).

## FINDINGS OF FACT

On July 13, 2010, DHS was notified through General Protective Services ("GPS") that M.S.S.H. and M.A.H. were frequently left unsupervised for long periods of time in a locked room by Mother, who had an extensive substance abuse problem and was diagnosed as having Bipolar Disorder and depression. Mother had also stated in the past that she was unable to care for M.S.S.H. and M.A.H. and Mother had asked a maternal aunt to care for M.S.S.H. and M.A.H. The report also stated that M.S.S.H. had difficulties as to verbal communication, M.S.S.H. and M.A.H. were behind on immunizations, M.A.H's teeth were decaying, that M.S.S.H. and M.A.H. had scars from flea bites, and M.A.H. stated that Mother was physically abusive towards M.A.H. (Statement of Facts: Petition for Involuntary Termination for Parental Rights).

On April 2, 2014, DHS received a GPS report alleging that on April 3, 2014, M.S.S.H. was observed with a black eye and M.S.S.H provided two different accounts as to how he sustained the injury. When Mother was asked by the Director of the Boys' and Girls' Club about this injury, Mother appeared to be under the influence of an unknown substance and Mother gave several different explanations. On April 16, 2016, DHS received a GPS report alleging that Mother was consistently late when Mother retrieved M.A.H. and M.S.S.H. from the Boys' and Girls' Club; that on April 16, 2016 Mother was more than two hours late retrieving M.A.H. and M.S.S.H. from the Boys' and Girls' Club and that Mother had telephoned the Boys' and Girls' Club and requested that personnel from the Boys' and Girls' Club escort M.A.H. and M.S.S.H. to Mother's home. Personnel from the Boys' and Girls' Club made four attempts to escort M.A.H. and M.S.S.H. to the Mother's home but no one was at Mother's home. The Philadelphia Police were notified and contacted Mother, who subsequently retrieved M.A.H. and M.S.S.H. appearing to be under the influence of an unknown substance. The report alleged that Mother had not paid attendance fees

for M.A.H. and M.S.S.H. to attend the Boys' and Girls' Club. The report also alleged that M.A.H. and M.S.S.H. were often unfed and wore the same clothes for days at a time; that M.S.S.H. was in need of behavioral services; that M.S.S.H. had difficulties staying focused; sitting still; reading and that he had weeks of homework in his bag. The report further alleged that Mother had not completed paper work to enroll M.S.S.H. for M.S.S.H. to receive behavioral services. (Statement of Facts: Petition for Involuntary Termination for Parental Rights).

On April 21, 2014, Mother was arrested for probation violations and incarcerated in Montgomery County Prison. On April 24, 2014, the maternal grandmother, Doris Santiago, contacted DHS and stated that she was caring for M.S.S.H. and M.A.H. On April 28, 2014, a safety plan was implemented for M.S.S.H. and M.A.H. which stated that Doris Santiago ("Maternal Grandmother") would ensure that the basic needs of M.S.S.H. and M.A.H. were met; ensure that M.S.S.H. and M.A.H. attend school; receive appropriate adult supervision and that the parents have supervised visits. Subsequently, DHS learned that prior to Maternal Grandmother moving into Mother's residence to care for M.S.S.H. and M.A.H. , the residence was littered with piles of clothes, dirty dishes, and trash, and that dead mice were stuck to the stove under the burners. (Statement of Facts: Petition for Involuntary Termination for Parental Rights).

On May 29, 2014, Maternal Grandmother appeared before the Honorable Jonathan Q. Irvine, who adjudicated M.S.S.H. and M.A.H. dependent and committed to the DHS. The Court further ordered that (1) Maternal Grandmother be authorized to sign for M.S.S.H. and M.A.H. medical care; (2) Maternal Grandmother become the educational decision maker for M.S.S.H. and M.A.H. (3) that Mother be referred to the Clinical Evaluation Unit for a drug screen and assessment ("CEU"). (Statement of Facts: Petition for Involuntary Termination for Parental Rights).

Mother was released from prison on July 30, 2014. On August 14, 2014, Mother completed intake at the Wedge Medical Center for substance abuse treatment. At the permanency review hearing held on January 23, 2015, Judge Irvine ordered that (1) M.S.S.H. and M.A.H. remain as committed and (2) that Mother be re-referred to the CEU for forthwith drug screen, dual-diagnosis assessment and monitoring to include three random drug screens prior next court listing. At the permanency review hearing held on April 23, 2015, Judge Irvine ordered that M.S.S.H. and M.A.H. remain as committed and that Mother be re-referred to the CEU for forthwith drug screen, dual-diagnosis assessment and monitoring to include three random drug screens prior next court listing. (Statement of Facts: Petition for Involuntary Termination for Parental Rights).

On May 28, 2015, T.B.M. was born. On May 30, 2015, DHS received a GPS report alleging that Mother and T.B.M. tested positive for marijuana and benzodiazepines during the birth of T.B.M. at Albert Einstein Medical Center; that Mother had been prescribed benzodiazepines; and that Mother was breast and bottle-feeding T.B.M. The report also alleged that T.B.M. was not experiencing any withdrawal symptoms; and that T.B.M. weighed 8 pounds and 2.1 ounces. The report further alleged that Mother has a history of substance abuse issues; that Mother was unemployed; that Mother was receiving Women, Infants and Children (WIC) benefits and Department of Public Welfare (DPW) benefits which include cash assistance and food stamps; that Mother was receiving grief counselling due to the sudden death of her sister; and that Mother was bonding with T.B.M. (Statement of Facts: Petition for Involuntary Termination for Parental Rights).

On May 31, 2015, without DHS' knowledge, T.B.M. and Mother were discharged from the hospital. Mother had stated to the hospital staff that she was residing at 5901 Spencer Street, Philadelphia PA ("5901 Spencer Street") and provided the staff with a mobile telephone number belonging to Maternal Grandmother.

On June 4, 2015, DHS attempted to locate the home at 5901 Spencer Street and learned that the address did not exist. On June 5, 2015, Mother telephoned DHS and stated that she would be available at 459 Winona Street, Philadelphia, PA ("459 Winona Street"). DHS went to the family's home located at 459 Winona Street, where the children's maternal uncle, whose name is unknown to DHS, answered the door and stated that Mother was at work with T.B.M.. DHS gave the uncle a notification letter requesting that Mother contact DHS regarding the GPS report received on May 30, 2015. On June 5, 2015, DHS telephoned Maternal Grandmother, who stated that that Mother did not have a mobile telephone and that she was unaware of Mother's whereabouts. DHS requested that Maternal Grandmother recommend that Mother contact DHS. On June 5, 2015, Mother telephoned DHS and stated that she would be available at 459 Winona Street. On June 5, 2015, DHS and the Community Umbrella Agency (CUA) Wordsworth case manager went to the home located at 459 Winona Street. The unidentified uncle allowed DHS and CUA to enter the home and wait for Mother and T.B.M., who failed to appear at the home. CUA telephoned Maternal Grandmother, who was informed that DHS and CUA planned to return to the home on June 6, 2015, and requested that Mother and T.B.M. be present in the home for the visit. On June 6, 2015, DHS and CUA met T.B.M. and Mother at the family's home. DHS and CUA discussed the allegations of the GPS report received on May 30, 2015, and the living arrangements in the home, as Mother was not to be residing in

6

Maternal Grandmother's home because she was providing kinship care for M.S.S.H. and M.A.H. Maternal Grandmother signed a Safety Plan stating that she would care for T.B.M. in the family's home until June 8, 2015. Mother agreed to leave the home and identified the home of the children's maternal uncle, Carlton Brown, as a residence for herself. On June 8, 2015, DHS went to Mr. Brown's home located at 1847 West Juniata Street. Mother and T.B.M. were present. Maternal Grandmother had transported T.B.M. to the home and left T.B.M. in Mother's care before DHS' arrival. DHS found the home to be inappropriate for T.B.M.. The family was unable to identify an appropriate caregiver for T.B.M.

On June 8, 2015, DHS obtained an Order of Protective Custody (OPC) for T.B.M., who was placed in foster care through Wordsworth. DHS learned that Mother was on probation in Delaware County and Montgomery County and that the home located at 459 Winona Street was secured through a Section 8 voucher that was awarded to Mother. (Statement of Facts: Petition for Involuntary Termination for Parental Rights).

On June 15, 2015, Mother was referred to the Achieving Reunification Center (ARC) program. At the permanency review hearing held on June 25, 2015, Judge Irvine ordered that (1) M.S.S.H. and M.A.H remain as committed, and (2) that Mother agreed to sign voluntary relinquishment petitions for the children. On July 15, 2015, CEU developed a Progress Report regarding Mother stating that she was unable to stay for a substance abuse assessment as ordered by Judge Irving on June 10, 2015; that she received the evaluation on July 14, 2015, which was not available at the time; that she would benefit from an intensive outpatient dual-diagnosis treatment program; that CEU was awaiting funding approval verification to complete the final recommendation; and that she had provided

documentation of her prescribed medications which substantiated her positive urinalysis screens for benzodiazepines; and that she tested positive for benzodiazepines and marijuana on June 10, 2015 and July 14, 2015. (Statement of Facts: Petition for Involuntary Termination for Parental Rights).

On September 11, 2015, CUA developed a Single Case Plan (SCP). The objectives identified for Mother were: (1) to maintain contact with the CUA case manager and Maternal Grandmother regarding the children; 2) to participate in supervised weekly visits with children; (3) to participate in parenting classes; (4) to stabilize her mental health and drug and alcohol issues; (5) to follow all treatment recommendations; and (6) to continue treatment at NET.

At the permanency review hearing held on September 17, 2015, Judge Irvine ordered that (1) M.S.S.H. and M.A.H remain as committed; (2) that Mother continue to receive supervised visitation as arranged; (3) that Mother appear at the visits alone; (4) that Mother be referred to the CEU for a forthwith drug screen, monitoring, dual-diagnosis assessment and five random drug screens; (5) and that Mother be referred to the ARC program for appropriate services. On July 21, 2016, DHS filed the instant Petition to Terminate Parental Rights. On August 2, 2016, the Honorable Vincent W. Furlong ruled to involuntarily terminate Mother's parental rights as to the Children. Thereafter, Mother filed the Instant Appeal on August 4, 2016.

## LEGAL ANALYSIS

In articulating the appellate standard of review of a termination of parental rights the Superior Court has stated:

> We are bound by the findings of the trial court, which have adequate support
> in the record so long as the findings do not evidence a capricious disregard

for competent and credible evidence. *In re Diaz*, 447 Pa. Super. 327, 669 A. 2d 372 (Pa. Super. 1995). Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of the witnesses and all conflicts in testimony are to be resolved by the finder of fact. *In re B.G.S.*, 418 Pa. Super. 588, 614 A.2d 1161 (Pa. Super. 1992).

In re Adoption of A.C.H., 2002 Pa. Super 218, P4; 803 A.2d 224, 228 (2002)

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. *See In re K.C.W.*, 456 Pa. Super. 1, 689 A.2d 294, 298 (1997). Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. *Id.* Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give a jury verdict. *See In re Child M.*, 452 Pa.Super. 230, 681 A.2d 793, 800 (1996). We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence. *See In re Matsock*, 416 Pa. Super. 520, 611 A.2d 737, 742 (1992). *In re C.S.*, 2000 PA Super 318, 761 A. 2d 1197, 1199 (Pa. Super. 2000). It is clear that in a termination proceeding, the focus is on the conduct of the parents. *In the Interest of A.L.D.*, 2002 PA Super 104, 797 A. 2d 326 (Pa.Super.2002). *In the Interest of M.D., 449 Pa. Super. 507, 674A.2d 702 (Pa.Super.2002).*

In the Matter of B.L.W., 2004 Pa. Super 30, P9; 843 A.2d 380, 383 (2004)

This Court found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa. C.S.A. §§2511(a)(1)(2)(5) and (8)[4] and 23 Pa.C.S.A. § 2511(b)[5]. The record demonstrates Mother's repeated and continued incapacity and abuse had caused her Children to

---

[4] (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
**23 Pa.C.S.A. § 2511(a)(2)**

[5] (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.
**23 Pa.C.S.A. § 2511(b)**

be without essential parental care, control or subsistence necessary for their physical or mental well-being and the conditions and causes of Mother's incapacity could not be remedied. The record also demonstrated that the termination of parental rights would not be detrimental to the Children and would be in the Children's best interests. At the termination hearing on August 4, 2016, the CUA Representative testified that Mother had failed her single case plan objectives by failing to complete a parenting class and a dual diagnosis treatment. (N.T. August 4, 2016 p.8 lines 9-24). The CUA Representative had also testified that Mother had not been consistent with visits to the Children and that her last visit with T.M.B. was in April 2016. (N.T. August 4, 2016 p. 9 lines 2-11). The CUA Representative testified that the Mother was not in a position to be reunited with her Children. (N.T. August 4, 2016 p. 9 lines 2-24). The CUA Representative also testified that adoption was suitable for the Children. (N.T. August 4, 2016 page 9 lines 1-25). The Mother had also failed a series of drug tests and had tested positive for marijuana when T.M.B. was born. (Statement of Facts: Petition for Involuntary Termination for Parental Rights).

Although Mother was not present she was represented by counsel and Mother was provided sufficient notice of the hearing. Pursuant 55 Pa.Code Section 3130.74 a petition or motion filed with the court shall be mailed to all parties and their counsel of record at least 15 days in advance of a hearing thereon. The county agency will not be sanctioned by the Department for noncompliance with the 15-day requirement of this section in instances when the scheduling of the hearing is beyond the control of the agency, and the agency has given as much notice as possible under the circumstances. In the instant case, the hearing was held on August 4, 2016 and notice of the hearing was delivered to a Reginald Brown on July 20, 2016 and notice of the hearing was posted on a property which was the Mother's last known address. (N.T. August 4, 2016 Page 6 lines 1-16). Under the circumstances given the fact that Mother had not communicated with DHS

or CUA and that Mother had been transient, DHS did serve Mother's counsel and had used all possible means to locate Mother and to attempt to serve Mother in person. In addition reasonable efforts were made to reunite the Mother with her Children and to determine whether the goal change to adoption was the disposition best suited to the safety, protection and physical, mental and moral welfare of the child. The DHS made numerous attempts to locate the Children and to find an appropriate living arrangement for the Children. The DHS and/or CUA established case plan objectives which had been consistently ignored by the Mother and not achieved by the Mother thus making it impossible to reunite Mother with her Children. (Statement of Facts: Petition for Involuntary Termination for Parental Rights).

## CONCLUSION

The Court, after careful review of the findings of fact and the testimony presented at the August 4, 2016 termination hearing, finds clear and convincing evidence to terminate Mother's parental rights under 23 Pa. C.S.A. §2511(a) (1)(2)(5) and (8). The Court further finds pursuant to 23 Pa.C.S.A. § 2511(b), termination of the Mother's parental would not have a detrimental effect on the Children and it would be in the Children's best interest. The Court further finds pursuant to 42 Pa.C.S.A. § 6351(f)(9)(i-iii) that the Mother was accorded reasonable notice of the hearing on August 4, 2016 and that DHS had made reasonable efforts to reunite the Mother with her Children. For the forgoing reasons, this Court respectfully requests that the August 4, 2016 Order terminating Mother's parental rights to the Children be **AFFIRMED**.

Date: 11-8-16

Vincent Furlong, J.